Johnny A. **BASS, Sr., David H. Campbell, Wilbert P. Gardner, Harold Ades and Robert Hines, Plaintiffs**

v.

**CITY OF JACKSON, MISSISSIPPI, Defendants.**

**Civil Action No. 3:09–cv– 549–CWR–FKB.**

United States District Court, S.D. Mississippi, Jackson Division.

Dec. 2, 2011.

Louis H. Watson, Jr., Robert Nicholas Norris, Louis H. Watson, Jr., PA, Jackson, MS, for Plaintiffs.

Lara E. Gill, Pieter Teeuwissen, Pieter Teeuwissen, PLLC, Claire Barker Hawkins, City of Jackson, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

CARLTON W. REEVES, District Judge.

Before the Court are the parties' dueling motions for summary judgment filed together with their exhibits spanning hundreds of pages, their rebuttals and supporting memoranda. Having considered the arguments of counsel, the court finds that there are genuine issues of material fact which necessitate that the issues be tried before a jury. Therefore, the Court finds that the motions are hereby DENIED.

## I. BACKGROUND

Plaintiffs, Johnny A. Bass, Sr. ("Bass"), David H. Campbell ("Campbell"), Wilbert P. Gardner ("Gardner"), Harold Ades ("Ades") and Robert Hines ("Hines"), are current or former District Fire Chiefs with the Jackson Fire Department (hereinafter "JFD"). They initiated this action in the Hinds County Circuit Court against the City of Jackson, Mississippi (hereinafter "CoJ"), alleging that they did not receive the requisite overtime wages to which they were entitled when they worked in excess of forty hours for a work week as required by the Fail Labor Standards Act, 29 U.S.C. § 207(a) ("FLSA"). The CoJ timely removed this action to this Court.[1]

After the close of discovery, on March 18, 2011, CoJ filed its Motion for Summary Judgment [Docket No. 133] and Memorandum in Support of its Motion for Summary Judgment [Docket No. 134]. That same day, Plaintiffs filed their Motion for Partial Summary Judgment as to Liability [Docket No. 135] and supporting Memorandum [Docket No. 136]. On April 1, 2011, CoJ filed its Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment as to Liability [Docket No. 137] while the Plaintiffs filed their response in opposition to City's Motion for Summary Judgment and supporting memorandum [Docket Nos. 138, 139]. On April 15, 2011, Plaintiffs' Reply to Defendant's Response to Motion for Partial Summary Judgment

---

1. The Court has jurisdiction over the present matter under Title 28 U.S.C. Section 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Pursuant to Title 28 U.S.C. Section 1441(b), CoJ removed this action to this Court.

as to Liability and CoJ's Reply in Opposition to Plaintiffs' Response to COJ's Motion for Summary Judgment [Docket Nos. 144 and 143] were filed. These matters are now ripe for adjudication.

## II. LAW AND ANALYSIS

### A. *Standard of Review*

Though motions for summary judgment are filed frequently, not every case is suitable for such disposition. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit Authority*, 404 F.3d 938, 940 (5th Cir.2005).

When confronted with these motions, this Court focuses on "genuine" issues of "material" facts. An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with an inference in such party's favor that the evidence allows would be sufficient to support a verdict in favor of the party." *Zisman v. Mason*, 2008 WL 879726, at *3 (S.D.Miss. Mar. 30, 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir.1987)). A fact is material if it is one which might effect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When filing a motion for summary judgment, "the moving party is not required to negate the elements of the nonmoving party's case." *Lawrence v. University of Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir.1999). Moreover, the movant "need not prove a negative when it moves for summary judgment on an issue that the [respondent] must prove at trial. It need only point to an absence of proof on [the non-movant's] part." *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant shows the court that it is entitled to judgment as a matter of law, the burden shifts to the resisting party to show why summary judgment is not proper. *Id.* As explained further by Judge Russell in *Walker v. J.E. Merit Constructors, Inc.*:

> The non-movant is then obligated to present competent evidence setting forth **specific** facts to illustrate the existence of a genuine issue of material fact for trial.... The resisting party may not create a genuine dispute simply by alleging that a dispute exists ... 'When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth **specific** facts showing that there is a genuine issue is for trial....'

707 F.Supp. 254, 257 (S.D.Miss.1988) (citations omitted)(emphasis added).

Pointing to and setting forth these specific facts is the responsibility of the non-movant, and the court has no duty whatsoever to sift through the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006). *See also Fuentes v. Postmaster Gen. of U.S. Postal Service*, 282 Fed.Appx. 296, 300 (5th Cir.2008), *citing Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) (not only must the non-movant point to specific facts, he must articu-

late the precise manner in which that evidence support his claim). " 'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.' " *Davis v. Louisville Municipal School District,* 2010 WL 290956, \*2 (N.D.Miss. Jan. 15, 2010) (quoting *Oliver v. Scott,* 276 F.3d 736, 744 (5th Cir.2002)).

This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain,* 864 F.2d 1235, 1241 (5th Cir.1989); *Hulsey v. State of Texas,* 929 F.2d 168, 170 (5th Cir.1991). The jury has the responsibility to assess the probative value of the evidence. As a consequence, a court must step back and not make any credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant. *Strong v. The Dept. of Army,* 414 F.Supp.2d 625, 628 (S.D.Miss.2005). *See also Man Roland, Inc. v. Kreitz Motor Express, Inc.,* 438 F.3d 476, 478 (5th Cir.2006) (explaining that a court cannot weigh the evidence or evaluate the credibility of witnesses when considering a motion for summary judgment).

### B. *The Fair Labor Standards Act*

The Fair Labor Standards Act ("FLSA") generally requires certain employers to pay overtime compensation to certain employees who work more than forty hours per workweek. In particular, the FLSA prohibits employers from employing a person

> who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce; for a

workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

The FLSA, however, does not come without certain exemptions. For example, Section 207(k) of the FLSA provides a partial exemption from the 40–hour–week threshold for employees engaged in "fire protection activities." 29 U.S.C. § 207(k) (2009). Similarly, individuals "employed in a bona fide executive, administrative, or professional capacity" may be completely exempt from overtime compensation. 29 U.S.C. § 213(a)(1)(2004). The CoJ raises both of these exemptions with respect to these Plaintiffs and demands that it is entitled to judgment as a matter of law.

### 1. *The shifting burdens under the FLSA*

The employer has the burden to prove an employee is exempt under the FLSA. *Monroe Firefighters Association v. City of Monroe,* 600 F.Supp.2d 790, 803–804 (W.D.La.2009). That burden has been described as a "high burden," *see, Burns v. Blackhawk Mgt. Corp.,* 494 F.Supp.2d 427 (S.D.Miss.2007), *citing Mutch v. PGA Tour, Inc.,* 2006 WL 510068 \*4 (M.D.Fla. Mar. 02, 2006), with the employer having to prove that the employee "fit[s] 'plainly and unmistakably within the exemption terms.' " *Clements v. Serco, Inc.,* 530 F.3d 1224, 1227 (10th Cir.2008) (citation omitted). Exemptions, moreover, are to be construed narrowly against the employer. *Blackhawk Management Corp.,* 494 F.Supp.2d 427, 430 (S.D.Miss.2007). *See also Wirtz v. Jernigan,* 405 F.2d 155, 158 (5th Cir.1968) (FLSA "is to be interpreted liberally with exceptions narrowly con-

strued against those seeking to assert them.").

While the employer is strapped with certain burdens, so too are employees. An employee must demonstrate that he was employed during the time for which compensation is sought and that he indeed performed work for which he alleges he was not compensated. *Escobedo v. Dynasty Insulation, Inc.,* 694 F.Supp.2d 638, 647 (W.D.Tex.2010). In doing so, there needs to be a showing that the employer had either actual or constructive knowledge that the employee was working overtime. *Von Friewalde v. Boeing Aerospace Operations, Inc.,* 339 Fed.Appx. 448, 455 (5th Cir.2009). "Constructive knowledge exists if [,] by 'exercising reasonable diligence [,]' an employer would become aware that an employee is working overtime." *Escobedo,* 694 F.Supp.2d at 647 (citations omitted). Once an employee meets his burdens, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or evidence to negate the inferences capable of being drawn from the employee's evidence. *Id.*

### 2. *Are the District Chiefs exempt employees under § 213(a)(1)?*

Relying upon 29 U.S.C. § 213(a)(1), CoJ contends that this action must be dismissed because district chiefs are exempt from FLSA overtime coverage as they are executive and administrative employees. Docket No. 134, at 2 (City of Jackson, Mississippi's Memorandum Brief in Support of Motion for Summary Judgment). For support, CoJ directs the Court to *Smith v. City of Jackson, Mississippi,* 954 F.2d 296 (5th Cir.1992), wherein the Fifth Circuit Court of Appeals held that district and battalion chiefs in the Combat Division of the City of Jackson "are exempt employees under the FLSA and, as such, are not entitled to payment under the over-time provisions of the Act." *Id.* at 299. There, the Fifth Circuit reversed the trial court judgment awarding overtime compensation in favor of the plaintiffs. *Id.*

The court of appeals provided a meticulous analysis of the duties and responsibilities of the district and battalion chiefs. For example, it explained that the City of Jackson was divided into four districts and within those districts were five to seven fire stations. *Id.* at 297. The district chiefs oversaw 30–40 fire department employees including the captains within each station and conducted the annual evaluation of the captains. Although district chiefs reported to the battalion chiefs, the court noted that district chiefs had the authority to recommend to the fire chief any disciplinary action of their subordinates. *Id.* In addition, some of the duties of the district chiefs included visiting all stations within their district; handling the paperwork including logging the work hours of those in the station and making sure that the data made it to the battalion chief so that he, in turn, could deliver the information to the administrative office. *Id.* The Court also determined that it was the responsibility of the district chief, at least in part, to ensure that a sufficient number of firefighters were at each station, that they had adequate equipment ready to respond to calls and that they were adequately trained. *Id.*

Based on that evidence, the court of appeals concluded that although the vast majority of their work time was spent waiting to respond to an emergency dispatch, district chiefs and battalion chiefs were regularly engaged in the managerial and supervisory activities of the Department. As a result, the court concluded the district and battalion chiefs fell within the definition of executive and administrative employees and were exempt.

CoJ fully embraces those findings, invokes the doctrine of *stare decisis,* and argues fervently that the *Smith* case dictates the outcome in this case. [Docket No. 134], at 2. Indeed, CoJ points to various evidence which demonstrates that the duties and responsibilities of the district chiefs are the same as those analyzed in *Smith.* *See, e.g.,* Deposition of Harold Ades, [Docket No. 133–4] at 18–22 (as district chief, he worked with the other district chiefs to make sure that all shifts and vacancies were filled); Deposition of Johnny A. Bass, Sr. [Docket No. 133–1] at 39(as district chief a primary responsibility was to assist the captains in staffing the various fire houses and carry out the orders of the division chief; also to serve on the management team and prepare for and respond to emergencies); Deposition of Wilbert P. Gardner [Docket No. 133–3] at 29 (a district chief was responsible for implementing and carrying out the policies of the Jackson Fire Department); Deposition of Sidney Johnson, the 30(b)(6) representative of CoJ [Docket No. 133–11] at 4–5(district chiefs are responsible for supervising, planning and coordinating activities and operation of the fire district during a single shift and coordinating assigned activities with other districts); Deposition of Turner Luttrell [Docket No. 133–12], at 33–34 (describing district chief as "elevated supervisor," who is over seven firehouses and more than thirty personnel across a third of the geographic area of the City of Jackson; and he had certain administrative functions including the daily completion and submission of various personnel reports); and Deposition of Johnny Bass [Docket No. 133–1], at 18 (district chiefs respond to all fire calls involving certain structures and if he arrives on the scene of calls to which he not required to respond and a captain is in charge, the captain turns over supervision to the district chief).

Analyzing the duties performed and the responsibilities undertaken by the Plaintiffs is not the sole consideration to determine whether these district chiefs are exempt. As explained in *Monroe Firefighters,*

'A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.'

*Monroe Firefighters,* 600 F.Supp.2d at 794, *quoting* 29 C.F.R. § 541.2(2004). CoJ must show that the Plaintiffs meet both the FLSA's "duties" test and the "salary" test. " '[T]he decision whether an employee is exempt from the FLSA's overtime compensation provisions under 29 U.S.C. § 213(a)(1) is primarily a question of fact ... However, the ultimate decision whether the employee is exempt from the FLSA's overtime compensation provisions is a question of law.' " 600 F.Supp.2d at 794 (quoting *Lott v. Howard Wilson Chrysler–Plymouth, Inc.,* 203 F.3d 326, 330–31 (5th Cir.2000)).

As the Court previously mentioned, it agrees with CoJ that it has demonstrated these plaintiffs meet the applicable duties requirements. *See, e.g.* [Docket No. 134] at 34 (citing among other things, the Job Description for district chief, *see,* [Docket No. 133–7], which in turn provides that the district fire chief "supervise[s], plan[s] and coordinate[s] the activities and operations of a Fire District; [e]xercises direct supervision over staff in district or division to which assigned; and [d]irects and assists in the implementation of goals and objectives; establish[es] schedules and methods for assigned units; provide[s] or coordinate[s] staff training; and [p]repare[s] reports, forms, recommendations and other

required administrative functions on operations and activities."). If the analysis ended here, the Court would have to conclude that *Smith* closes the door on the Plaintiffs' claims. CoJ, however, has offered little evidence on the second prong: whether the district chiefs meet the compensation form and amount of the salary basis test. *See Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 265 (5th Cir. 2000); *Mendoza v. City of New Orleans*, 2007 WL 1550963 *6 (E.D.La. May 24, 2007); and *Monroe Firefighters Ass'n*, 600 F.Supp.2d at 794.[2] And, CoJ "bears the burden of proving that the [e]mployees fit 'plainly and unmistakably within the exemption's terms.'" *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir.2008). This, again is a high burden. *Mutch*, 2006 WL 510068 at *4.

■ Under the salary basis test, exempt white collar employees regularly receive a predetermined salary on a weekly or less frequent basis. 29 C.F.R. § 541.602(a). In order to be classified as exempt, an executive employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. *Monroe Firefighters*, 600 F.Supp.2d at 795, *citing* 29 C.F.R. § 541.602(a)(2009).[3] The predetermined

amount of compensation may not be reduced due to variations in the quality or quantity of the work performed. *Cowart*, 213 F.3d at 264–65. *See also, Monroe Firefighters*, 600 F.Supp.2d at 803–04. *Accord. Thomas v. Fairfax County*, 758 F.Supp. 353 (E.D.Va.1991) ("Except when expressly permitted by the regulations, employers may not make any deductions from the predetermined amount[4] paid to exempt white-collar employees.").

■ Here, CoJ merely assumed and operated as if the plaintiffs were exempt from coverage simply because they performed the duties of executive and administrative employees. There, however, is evidence that Plaintiffs were not paid on a salary basis because their pay could be reduced based on the quantity of hours they worked. For proof on this point, Plaintiffs direct the Court to an e-mail exchange between one of the plaintiffs, D.H. Campbell, and Turner Luttrell, who was serving as fire chief at that time. Campbell posed the following question to Chief Luttrell: "If I, as District Chief need to take off work for only a few hours instead of an entire day or shift and do not have any accrued leave time, will I as district chief have my pay docked for each hour that I'm off work? Yea or nay." In

---

**2.** Employees engaged in "fire protection activities" are exempted from the 40–hour–week threshold. See 29 U.S.C. § 207(k). As discussed more fully below, there is no real dispute that these plaintiffs were engaged in fire protection activities. There remains a question, however, *if* and *when* CoJ adopted a work period applicable to these plaintiffs which authorizes work in excess of forty hours in a workweek for those engaged in fire protection activities. The primary dispute addressed at this point is whether there is sufficient proof that the Plaintiffs are completely exempt under 29 U.S.C. § 213(a)(1).

**3.** There is no dispute that the requisite salary of $455.00 per week was met. 29 C.F.R. § 541.100(a)(1).

**4.** Predetermined amount is a fixed amount paid during an indeterminate number of pay periods—not the amount paid for a single two or four-week period. *Hurley v. Oregon*, 27 F.3d 392, 395 (9th Cir.1994), *overruled on other grounds, Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). It is the amount "regularly received each pay period." 29 C.F.R. § 541.118(a). In addition, the Court notes there are exceptions to the no-deductions rule, but the parties do not assert that any of the exceptions apply to the instant case.

response, Chief Luttrell explained as follows:

> After speaking with and seeking clarification from Fire Administration please note that such an employee not have [sic] accrued leave (sick or vacation) and is off work for a specific time period the employee is docked for the time on an hourly basis, for example employee off three hours for a physician appointment would be docked three hours.
>
> Hope this resolves your concern.

[Docket 135–5], 1.

This suggests strongly that a district chief's quantity of work could potentially affect his salary. In addition, there is more related to disciplinary deductions. Plaintiffs point to Memo 08–013 from then Fire Chief Vernon Hughes issued to All Emergency Services Personnel notifying them of the department's AWOL policy. See [Docket No. 135–6] ("Any Firefighter" who is tardy "without prior notification to their immediate supervisor is absent [without] leave (AWOL)." "Any Firefighter failing to report to work for his/her duty assignment will be considered absent [without] leave (AWOL) ... [and] Any Firefighter who is **absent for three (3) consecutive assigned shifts** without permission ... shall be considered to have abandoned the job and to have voluntarily resigned employment with the city.")(emphasis in original). *See also* 30(b)(6) Deposition of Chief Sidney Johnson [Docket No. 135–7], at 5–7 (possible that district chiefs could be disciplined by being given a shift off).

This evidence, therefore, calls into question whether the salary basis test is met and therefore whether the district chiefs are exempt as bona fide executive, administrative or professional employees. Indeed, at a minimum, a genuine issue of material fact which justifies the denial of CoJ's request for summary judgment. *See York v. Wichita Falls, Texas,* 944 F.2d 236, 242 (5th Cir.1991) (salary status of fire captains and battalion chiefs required resolution of material fact; therefore, summary judgment improper).[5]

---

**5.** Plaintiffs demand summary judgment on the issue of liability. This assertion is based in part on their contention "Defendant had improper policies that had a 'substantially [sic] likelihood' of reducing Plaintiffs salary, which caused Plaintiffs to not be paid on a 'salary basis.'" [Docket No. 139] at 13. However, based on the regulations issued following the decision in *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), which was decided after *Smith v. City of Jackson, supra,* and the totality of the circumstances, the Court finds additional factual development at trial is warranted before any liability can attach. Simply put, there are still genuine issues of material fact which require the court to stay its hands and not make any credibility choices.

In *Auer,* the Supreme Court adopted the Secretary of Labor's interpretation of the regulations governing the FLSA which provided that employees fall outside of the salary-basis test if they are "covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.'" 519 U.S. at 461, 117 S.Ct. at 911. The Court explained that "the standard is met 'if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions.'" *Blackshear v. City of Houston,* 121 F.3d 703, 1997 WL 450086, *2 (5th Cir.1997), *quoting Auer,* 519 U.S. at 461, 117 S.Ct. at 911. Memo 08–013 mentioned above, which appears to be nominally applicable to all employees, both salaried and non-salaried, and authorizes deductions which would be proper only for non-salaried employees, does not in and of itself communicate that such deductions will be made for employees in Plaintiffs' position. The *Auer* Court warned that such an interpretation avoids the imposition of "massive and unanticipated overtime liability ... in situations in which a vague or broadly worded policy is nominally applicable to a whole range of personnel but is not 'significantly likely' to be invoked against salaried employees." 519 U.S. at 461, 117 S.Ct. at 911. Like the court found in *Blackshear,* however, there are genuine issues of material facts whether

Having failed to establish as a matter of law that the district chiefs met the salary basis test, this Court cannot find that these Plaintiffs are exempt from FLSA coverage.

3. *Are the District Chiefs engaged in fire protection activities and thus exempt from coverage?*

██ CoJ also contends that the Plaintiffs are exempt because they are engaged in fire protection activities. Employees engaged in "fire protection activities" are exempted from the 40–hour–week threshold. See 29 U.S.C. § 207(k). In the case *sub judice*, there is no real dispute that these plaintiffs were engaged in fire protection activities. Questions, however, abound as to whether the CoJ adopted a work period applicable to these plaintiffs which authorizes work in excess of forty hours in a workweek for those engaged in fire protection activities and if so, was the partial exemption applied correctly with respect to each plaintiff.

██ COJ argues it is entitled to the partial exemption because the Plaintiffs were engaged in fire protection activities and contends that the Plaintiffs have put forth no evidence which establishes that they worked in excess of 212 hours within a 28–consecutive day work period, a work period it claims to have adopted. See 29 C.F.R. § 553.230. The employer, however, has the burden of proving that it has adopted a work period "by 'clear and affirmative evidence.'" *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992). *See also Singer v. City of Waco, Tex.*, 324 F.3d 813, 820 (5th Cir.2003) (where city's memo stating the city's established work cycle was contradicted by the testimony of the city's finance director, jury could find the work cycle was as this policy has been applied to some or all of Plaintiffs. 1997 WL 450086, *2. Summary

explained by the finance director). There is no such evidence here.

In its 30(b)(6) deposition, CoJ testified that a 15 day work period for firefighters was adopted and during this period the firefighters worked 24 hours on and 48 hours off. [Docket No. 135–2], at 11–15. But, that witness went on to explain that this period did not apply to the district chiefs because they were considered exempt employees. *Id.* at 15. The Court finds in this regard, at a minimum, there is a genuine issue of material fact left for the jury. *See, e.g., Randle v. City of New Albany*, 2006 WL 2085387 *3 (N.D.Miss. July 25, 2006) (finding there was a genuine issue of material fact regarding whether city had adopted a qualifying work period which would control when overtime would begin for employees engaged in fire protection); *Grover v. Adams County Bd. of Supervisors*, 2006 WL 1195355 (S.D.Miss. May 4, 2006) (summary judgment denied where county's evidence only demonstrated that a work 28–day work period had been adopted, but it did not say WHEN it was adopted)(emphasis in the original); *Singer*, 324 F.3d at 818 (question of fact existed as to what work period was adopted by city; therefore issue properly submitted to the jury), (*citing Spradling v. City of Tulsa, Okla.*, 95 F.3d 1492, 1504–05 (10th Cir.1996); and *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1147 (10th Cir.1992)). Secondly, as discussed above, even if it is assumed that the City adopted a work period for these plaintiffs, there is a genuine dispute as to whether the district chiefs were paid in accordance with the salary basis test. For example, the district chiefs were paid a set amount for their normally scheduled hours, but when they worked beyond their scheduled hour, judgment, therefore, is inappropriate, and the requests from both parties is denied.

they were paid on a straight time hourly basis. *See* CoJ's 30(b)(6) Deposition, [Docket No. 135–2], at 13.

Judgment as a matter of law on the CoJ's claim that these Plaintiffs are exempt from coverage because they are engaged in fire protection activities, therefore, is inappropriate on this record.

### C. *Are the Plaintiffs entitled to Liquidated Damages?*

 In their Motion for Partial Summary Judgment, citing 29 U.S.C. § 216(b), Plaintiffs contend that they are entitled to liquidated damages. Plaintiffs argue that in order for CoJ to avoid having to pay liquidated damages upon a finding that the CoJ violated the FLSA, CoJ must establish that its acts or failures to act in compliance with the FLSA were both in good faith and predicated upon reasonable grounds for not acting in accordance with the law. [Docket No. 136 at 6]. Plaintiffs note that CoJ faces a plain and substantial burden on this point. *Id., citing Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1415 (5th Cir.1990). As explained in *Martin v. PepsiAmericas, Inc.,* 2008 WL 4755394* 4 (N.D.Miss. Oct. 28, 2008):

> "[A] court can decline to award, or reduce the amount of liquidated damages if it finds the employer acted in good faith and with reasonable grounds to conclude that the plaintiff was exempt from overtime ... The Fifth Circuit has held that 'even if an employer does introduce evidence supporting a 'good faith and reasonable belief' defense, the trial court may still, in its discretion, award liquidated damages.'"

(citations omitted). *See also Blackhawk Mgmt. Corp.,* 494 F.Supp.2d at 436–37 (trial court may in its discretion award liquidated damages).

 CoJ counters that Plaintiffs request for liquidated damages should be denied for a number of reasons, chief of which is its reliance upon the *Smith v. City of Jackson* case. Because of the factual disputes and more importantly because liability has not been established, the Court denies Plaintiffs' motion for summary judgment on this claim.

### D. *Equitable Estoppel*

 The Plaintiffs contend that CoJ should be equitably estopped from raising the defense of statute of limitations. "The statute of limitations for FLSA claims is generally two years, but may be extended to three years upon a finding that the violation was 'willful'" *Mando v. C.A.L. Realty Group, Inc.,* 2007 WL 1725414, *4 (S.D.Miss. June 11, 2007) (citing 29 U.S.C. § 255(a)). Plaintiffs assert that CoJ is equitably estopped from asserting any statute of limitations defense as it "actively misled" Plaintiffs to believe they were not owed overtime wages for several years. [Docket No. 136 at 8].

 Fifth Circuit law holds that the doctrine of equitable estoppel seeks to prevent those who benefit from a transaction from reaping its benefits while avoiding its associated obligations. *See Long v. Turner,* 134 F.3d 312, 318 (5th Cir.1998). Under equitable estoppel, "an employer is estopped from asserting the filing period if the employer misrepresented or concealed 'facts necessary to support [the applicable claim].'" *Rhodes v. Guiberson Oil Tools Div.,* 927 F.2d 876, 878–79 (5th Cir.1991) (internal citation omitted). "[T]he party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change [its] position for the worse. And ... that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Minard v. ITC Deltacom*

*Communications, Inc.*, 447 F.3d 352, 358–359 (5th Cir.2006) (internal citations and quotation marks omitted). As explained in *Mando, supra:*

> "[t]he doctrine of equitable estoppel 'focuses on whether the defendant acted *affirmatively* to stop or delay the plaintiff from bringing suit within the limitations period.' It requires that a defendant take active steps such as destruction of evidence or promises not to plead the statute of limitations as a defense."

2007 WL 1725414, *5 (quoting *Ashafa v. City of Chicago*, 146 F.3d 459, 463 (7th Cir.1998) (emphasis by *Ashafa* Court)).

 The propriety of equitable estoppel may be determined on a motion for summary judgment provided that there are no material factual issues that must first be resolved. *See Chavez v. Carranza*, 559 F.3d 486, 494 (6th Cir.2009). Given this, Plaintiffs have not demonstrated that they are entitled to summary judgment on this claim. First, Plaintiffs merely rely on Defendant's apparent mistaken belief that Plaintiffs were exempt from FLSA overtime compensation solely based upon the duties they performed. Second, Plaintiffs have provided no evidence that CoJ concealed facts which would have supported Plaintiffs' claims. Plaintiffs, moreover, have not pointed to any conduct of CoJ which induced them not to file suit nor have they demonstrated that the CoJ acted affirmatively to stop them from filing suit. Without such conduct, equitable estoppel will not be applied. Plaintiffs' back pay, if any, will be limited to the two years from the date of the filing of this law suit. *See, Escobedo*, 694 F.Supp.2d at 647 (holding no equitable estoppel when simply relying on assertion of being misled).

Accordingly, Plaintiffs' request for summary judgment on this issue is denied and CoJ is not estopped from asserting a statute of limitations defense.

### E. *PERS Contract*

Plaintiffs contend that CoJ has breached its contract with PERS (Public Employee Retirement System of Mississippi) because they were not paid their overtime wages. Because there has been no finding that CoJ violated the FLSA, granting summary judgment for Plaintiffs on this issue is premature.

## III. Trial on the Merits

Although these district chiefs have established that there is a genuine issue of material fact concerning their employment status, during the trial, as explained above, *supra* at 706–07, each plaintiff will have the burden to prove that he performed work for which he was not compensated. *Escobedo v. Dynasty Insulation, Inc.*, 694 F.Supp.2d 638, 647 (W.D.Tex.2010) (citing *Harvill v. Westward Commc'ns L.L.C.*, 433 F.3d 428, 441 (5th Cir.2005)). Should each district chief prove that he performed work or which he was not compensated, " '[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.' " *Escobedo*, 694 F.Supp.2d at 647 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). This is so because the employer is in the best position to keep accurate employment records for each of its employees. *Id.* The City of Jackson is required to

> make, keep, and preserve such records of the persons employed by [them] and of the wages, hours and other conditions and practices of employment maintained by [them], and shall preserve such records for such periods of time, and shall

make such reports therefrom to the Administrator as [he or she] shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

29 U.S.C. § 211(c). Should the City fail to come forward with such evidence the finder of fact may award approximate damages to the employee. *Escobedo,* 694 F.Supp.2d at 647, *citing Mt. Clemens, supra.*

## III. CONCLUSION

For the foregoing reasons, the City of Jackson's Motion for Leave to File in Excess Pages [Docket No. 132] is **GRANTED.**

IT IS FURTHER ORDERED that the City of Jackson's Motion for Summary Judgment [Docket No. 133] is **DENIED.**

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment [Docket No. 111] and Plaintiffs' Motion for Summary Judgment (Partial as to Liability) [Docket No. 135] are **DENIED.**

Within ten days, counsel for the parties are instructed to contact the Courtroom Deputy to set a date for a status conference to occur within the next thirty days so that a trial date may be set.